TIMOTHY RYLEE,                      :
                                   :
        Plaintiff,                 :
                                   :
    v.                             :      CIVIL ACTION NO.
                                   :      2:06-CV-0158-RWS
SHERIFF CHARLES                    :
CHAPMAN, BANKS COUNTY,             :
JOSEPH CHAPMAN, C. WAY, B.         :
LORD, and JOHN DOE,                :
                                   :
        Defendants.                :

## <u>ORDER</u>

This case comes before the Court on Plaintiff's Motion for Partial

Summary Judgment [72]; Defendants' Motion for Summary Judgment [87];

Plaintiff's Motion for Leave to File Brief Out of Time [96]; and Plaintiff's

Motion to Strike [102].  As an initial matter, Plaintiff's Motion for Leave to File

Brief Out of Time [96] is **GRANTED nunc pro tunc**.  After reviewing the

entire record, the Court enters the following Order.

### Background

Plaintiff Timothy Rylee brought this action alleging that Defendants

violated federal law when they arrested, interrogated, and booked Plaintiff for domestic violence without providing an accommodation for his hearing impairment. Plaintiff suffers from both Auditory Neuropathy and dyslexia, which deprives him of the ability to understand words and hear himself as he talks. Plaintiff states that he often nods agreeably when spoken to, but he does not fully comprehend or remember what was said to him.

Plaintiff claims that on October 31, 2005, his wife called 911 to complain that he physically assaulted her. Defendants Way and Lord, officers with the Banks County Sheriff's Office, responded to his home. The 911 operator informed Defendants Way and Lord that Plaintiff was hearing impaired, but Defendants Way and Lord did not bring an interpreter to communicate with Plaintiff.

Following his arrest, Plaintiff was then transported to the Banks County Jail. No attempt was made to acquire an interpreter or explain why he was being incarcerated. During that time, Defendant Joseph Chapman interrogated Plaintiff, and as a result of their discussion, Plaintiff signed a written inculpatory statement that was dictated by Defendant Chapman. Plaintiff alleges that Defendant Chapman made no effort to provide an interpreter during

AO 72A
(Rev.8/82)

that interrogation. Plaintiff, however, did not make a request for an interpreter or any other means to more effectively communicate, and does not claim that he could not understand the written communication provided by Defendant Chapman.

Plaintiff was then transported to the Banks County Magistrate Court, where he had his first appearance hearing. Plaintiff alleges that no interpreter was provided during the hearing. Plaintiff, however, did not make a request for an interpreter or any other means to more effectively communicate.

After his first appearance, Plaintiff was transported back to the Banks County Jail, where he claims he was denied, despite his request, the ability to use his cell phone for text-messaging purposes. Plaintiff alleges that the Banks County Sheriff's Office maintains no special equipment that would allow a hearing impaired person to operate a telephone or make telephone calls. Plaintiff spent one night in jail and was released the next day.

In Plaintiff's subsequent criminal prosecution for family violence battery, Plaintiff entered into a pretrial diversion program, under which the criminal charges were dismissed after Plaintiff successfully completed the program.

AO 72A
(Rev.8/82)

<u>State v. Rylee</u>, 06-CR-044-A (Banks Co. Super. Feb. 6, 2007) [Doc. 74-9].
This action followed.

Plaintiff brings claims under the Americans with Disabilities Act, 42
U.S.C. § 12131, <u>et seq.</u> (Count 1), under the Rehabilitation Act, 19 U.S.C. § 794
(Count 2), and under 42 U.S.C. § 1983 alleging violations of the Due Process
and Equal Protection Clauses of the Fourteenth Amendment to the United
States Constitution (Count 3).

Both parties have moved for summary judgment and Plaintiff moves to
strike the written transcript of his deposition in this action, but not the video.
The Court now takes up those Motions.

**Discussion**

## I.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be
granted "if the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party is entitled to
judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears
'the initial responsibility of informing the . . . court of the basis for its motion,

4

and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

AO 72A
(Rev.8/82)

Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.     Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment, contending that he is entitled to judgment as a matter of law for several reasons. First, Plaintiff asserts for the first time that Defendants Way, Lord, and Chapman violated the Fourth Amendment because they falsely arrested Plaintiff without probable cause and violated the procedures required under O.C.G.A. § 24-9-103 for interrogating a person with a hearing impairment. As Defendants point out, however, no

Fourth Amendment claim and no such allegations appear in Plaintiff's Complaint. What is more, despite Defendants' protestations, Plaintiff has made no effort to amend his Complaint in this action to add a Fourth Amendment claim. As such, the Court does not construe Plaintiff's Complaint as asserting a Fourth Amendment violation. See Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (declining to address claim not raised in complaint, and stating that "[l]iberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint."); Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir.2004) (dismissing claims not raised in complaint but disclosed over the course of discovery). Insofar as Plaintiff moves for summary judgment on that basis, his motion is due to be denied.[1]

---

[1] The Court has, nevertheless, had the benefit of review of the evidence and full briefing by the parties on Plaintiff's Fourth Amendment allegations. Even if the Court were to construe Plaintiff's Complaint as stating a claim under the Fourth Amendment, the Court would find Defendants are entitled to qualified immunity because arguable probable cause existed to arrest Plaintiff for domestic violence based on the allegations of Plaintiff's son and wife. See Rankin v. Evans, 133 F.3d 1425, 1441 (11th Cir. 1998) (stating that an officer generally is entitled to rely on a victim's criminal complaint as support for probable cause). Moreover, O.C.G.A. § 24-9-103 does not provide an independent cause of action and, insofar as Plaintiff brings claims against Defendants in their individual capacities, they would be entitled to official immunity because Plaintiff has not alleged, much less demonstrated, that they acted with the malice required by Georgia law. Cameron v. Lang, 274 Ga. 122, 549 S.E.2d 341, 344 (Ga. 2001); Ga.

AO 72A
(Rev.8/82)

Second, Plaintiff argues that he is entitled to judgment as a matter of law on his claims under the ADA, Rehabilitation Act, and Fourteenth Amendment because Defendants discriminated against Plaintiff based upon his hearing impairment and failed to provide a reasonable accommodation to Plaintiff. For the reasons provided more fully below, the Court concludes that Defendants, and not Plaintiff, are entitled to summary judgment in this action. Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED**.

## III.   Defendants' Motion for Summary Judgment

Defendants move for summary judgment, contending that Plaintiff's Rehabilitation Act claim is due to be dismissed for lack of evidence of federal funding; Sheriff Chapman is entitled to official immunity; and Plaintiff's remaining claims fail as a matter of law on a number of other grounds.[2] For the reasons that follow, the Court agrees that Defendants are entitled to summary judgment.

---

Const. art. 1, § 2, ¶ IX(d).

[2] The Court commends defense counsel for the thoroughness and eloquence of his briefing, which has proven significantly helpful to the Court in navigating the complexities of the legal issues presented in this action.

## A.    Plaintiff's Rehabilitation Act Claim is Due to Be Dismissed.

Defendant moves for summary judgment, contending that Plaintiff has failed to bring forth any admissible evidence that either the State of Georgia or Banks County receives federal funding for any program or activity from which Plaintiff claims he was excluded or denied a benefit.  The Rehabilitation Act provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under *any program or activity receiving Federal financial assistance* . . . .

29 U.S.C.A. § 794 (a) (emphasis added).

In addition to demonstrating a *prima facie* case of disability discrimination, a plaintiff seeking relief under the Rehabilitation Act must bring forward affirmative evidence that the program or activity from which he was excluded or denied a benefit "itself received or was directly benefitted by federal financial assistance."  Doyle v. Univ. of Ala., 680 F.2d 1323, 1327 (11th Cir. 1982) (quoting Brown v. Sibley, 650 F.2d 760 (5th Cir. 1981)); see also U.S. Dept. of Transp. v. Paralyzed Veterans of America, 477 U.S. 597, 605, 106

AO 72A
(Rev.8/82)

S. Ct. 2705, 91 L. Ed. 2d 494 (1986) (holding that of § 504 of the Rehabilitation Act could not be applied to entities that did not "actually receive federal financial assistance").

Plaintiff has offered no admissible evidence that either Banks County or the State of Georgia receives federal funding for any program from which Plaintiff claims he was excluded or denied a benefit.[3]  As such, Plaintiff's claim under the Rehabilitation Act fails as a matter of law.  Moreover, insofar as Plaintiff sues Defendants under the Rehabilitation Act in their individual capacities, those claims are due to be dismissed for the additional reason that individuals are not subject to suit under the Rehabilitation Act because they are not funding recipients.  Lollar v. Baker, 196 F.3d 603, 608-09 (5th Cir. 1999) (holding that a state official could not be subject to suit in individual capacity

---

[3] As Defendant correctly points out, Plaintiff's argument that the Banks County Jail receives federal compensation for the housing of federal prisoners is insufficient as a matter of law to demonstrate the existence of a federal subsidy.  See Shotz v. American Airlines, Inc., 420 F.3d 1332, 1335 (11th Cir. 2005) (stating that federal government must provide *subsidy* to an entity "as opposed to *compensation*" to trigger the obligations of the Rehabilitation Act) (emphasis added).  Moreover, Plaintiff's reliance on two newspaper articles that purportedly contain proof that Banks County receives federal funding is insufficient because such evidence is hearsay and inadmissible to demonstrate the truth of the matters asserted therein.  See United States v. Baker, 432 F.3d 1189, 1211-12 (11th Cir. 2005) (finding newspaper articles were inadmissible hearsay when they were relied upon for the truth of their contents).

under the Rehabilitation Act because she was not a funding recipient).

Accordingly, insofar as Defendants move for summary judgment on Plaintiff's

Rehabilitation Act claim, their motion is due to be granted.

**B.      Sheriff Chapman is Entitled to Official Immunity From All Claims.**

Defendant Chapman contends that he is entitled to official immunity

under the Eleventh Amendment because he was acting as an arm of the state in

all functions relevant to the instant action.

It is well-settled that the Eleventh Amendment, as a general matter,

precludes a person from seeking monetary damages against the State or a state

official acting in his or her official capacity, unless the plaintiff can demonstrate

that sovereign immunity has been waived or abrogated.  <u>Edwards v. Wallace</u>

<u>Cmty. Coll.</u>, 49 F.3d 1517, 1524 (11th Cir. 1995).  Thus, the Court must first

determine whether Sheriff Chapman was acting as a state official in enacting

the policies relevant to this litigation, and if so, whether sovereign immunity

has nevertheless been waived or abrogated.

1.      *Sheriff Chapman Acted as an Arm of the State*.

Plaintiff does not address in any meaningful way Defendant Chapman's

AO 72A
(Rev.8/82)

invocation of official immunity or his assertion that he acted on behalf of the State in all conduct relevant to this litigation. Nonetheless, viewing Plaintiff's contentions liberally, Plaintiff contends that Sheriff Chapman, in allegedly enacting a policy denying arrestees and pretrial detainees the benefit of an interpreter, an auxiliary aid for a telephone, or other accommodation for the hearing impaired, acted as an instrument of Banks County, not the State, and that the Eleventh Amendment bar is consequently inapplicable in this action. For the reasons discussed below, the Count concludes that Plaintiff's attempt to avoid the preclusive effect of the Eleventh Amendment is unavailing.

In Grech v. Clayton County, 335 F.3d 1326 (11th Cir. 2003), the Eleventh Circuit held that a Georgia sheriff is a state official for purposes of executing his law enforcement authority in enacting policies for conducting arrests. And in Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003), the Eleventh Circuit held that a Georgia sheriff is a state official for purposes of executing his law enforcement authority in enacting policies at a county jail. More recently, the Eleventh Circuit's decided Purcell ex rel. Estate of Morgan v. Toombs County, 400 F.3d 1313 (11th Cir. 2005), in which it stated:

> [In <u>Manders</u>,] we decided that a sheriff's "authority
> and duty to administer the jail in his jurisdiction flows
> from the State, not [the] County." [Cit.] Thus
> <u>Manders</u> controls our determination here; [the sheriff]
> functions as an arm of the State—not [the]
> County—when promulgating policies and procedures
> governing conditions of confinement at the [ ] County
> Jail. Accordingly, even if [the plaintiff] had
> established a constitutional violation, [the sheriff]
> would be entitled to Eleventh Amendment immunity
> from suit in his official capacity.

400 F.3d at 1325.

Here, Plaintiff asserts that Sheriff Chapman violated 42 U.S.C. § 1983

and the ADA by enacting policies that violated his constitutional and statutory

rights during his arrest, processing, and pre-trial detention at a local jail.

Plaintiff makes no effort to distinguish Sheriff's Chapman's position and

responsibility from the sheriffs' roles in <u>Grech</u>, <u>Manders</u>, and <u>Purcell</u>, which the

Eleventh Circuit made clear were roles in which a sheriff acted on behalf of the

state. In light of those cases, the Court concludes that Sheriff Chapman acted as

an arm of the State of Georgia—and not Banks County—in both his capacity as

a law enforcement officer enacting policies applicable to Plaintiff's arrest and in

his capacity as an administrator of the Banks County Jail. Accordingly,

Plaintiff must demonstrate that the state has waived or Congress has abrogated

Eleventh Amendment immunity in order to prevail on his claims against Sheriff

Chapman. "[T]he plaintiff bears the burden of establishing subject matter

jurisdiction, and, thus, must prove an explicit waiver of immunity." See Ishler

v. Internal Revenue, 237 F. App'x 394, 398 (11th Cir. 2007) (citations omitted).

2. *Sheriff Chapman is Entitled to Official Immunity from Plaintiff's Claim under 42 U.S.C. § 1983.*

It is well-established that an individual cannot sue a state official acting

in his official capacity for monetary damages under 42 U.S.C. § 1983. E.g.,

Manders, 338 F.3d at 1308. Accordingly, insofar as Sheriff Chapman moves

for summary judgment on Plaintiff's § 1983 claim against him in his official

capacity, the motion is granted.

3. *Sovereign Immunity Has Been Abrogated By Title II of the ADA Insofar as Plaintiff Can Demonstrate an "Actual" Constitutional Violation.*

Although the Eleventh Amendment bars all suits for money damages

against state officers under § 1983, the same is not the case under Title II of the

ADA. In United States v. Georgia, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d

650 (2006), the Supreme Court held that Title II of the ADA validly abrogates

state sovereign immunity "insofar as Title II creates a private cause of action for

14

damages against the States for conduct that *actually* violates the Fourteenth Amendment . . . ." Id. at 159. The Court stated, however, that it was an open question whether Title II further abrogated state sovereign immunity for claims that did not rise to the level of a constitutional violation but nonetheless could be vindicated vis-a-vis Congress's Enforcement Power under the Fourteenth Amendment. Id. Instead of discussing further the issue of whether principles of sovereign immunity would allow facially constitutional conduct to form the basis of a Title II action, the Court instructed the lower courts on remand to decide "insofar as [ ] misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." Id.

The Eleventh Circuit has not had the occasion to address the extent of the ADA's abrogation of state sovereign immunity. Nor does Plaintiff in his summary judgment papers. Indeed, Plaintiff offers no argument whatever concerning the question left open by United States v. Georgia—namely, whether Plaintiff can assert a damages claim against Sheriff Chapman in his official capacity for conduct that is not itself unconstitutional but nonetheless violates the ADA. Instead, Plaintiff claims that all of the conduct at issue in

this litigation both violated the ADA and the Fourteenth Amendment. Because Plaintiff has failed to materially argue this issue and, in any event, does not specify that any conduct alleged in his Complaint violated the ADA but not the Constitution, see Miller v. King, 449 F.3d 1149, 1151 (11th Cir. 2006) (requiring plaintiff to demonstrate "what specific conduct allegedly violates Title II of the ADA but does not violate the Eighth Amendment"), the Court finds that Plaintiff has failed to meet his burden of proving that Congress has abrogated sovereign immunity for an ADA claim premised on conduct that violates the ADA but is not otherwise unconstitutional. Accordingly, in order to prevail on his ADA damages claim against Sheriff Chapman, Plaintiff must establish an underlying Fourteenth Amendment violation. See Rhodan v. Schofield, No. 1:04-CV-2158, 2007 WL 1810147, at *16 (Jun. 19, 2007).

      3.    *Plaintiff Has Failed To Demonstrate a Violation of the Fourteenth Amendment, and thus Sheriff Chapman is Entitled to Official Immunity.*

For the reasons discussed below, the Court concludes that Plaintiff has failed to demonstrate that any conduct at issue in this litigation rose to the level of a violation of the Fourteenth Amendment. Therefore, Plaintiff has failed to demonstrate that Congress abrogated sovereign immunity through the

16

enactment of Title II of the ADA for liability for the claims in this case. Sheriff

Chapman is thus entitled to official immunity from Plaintiff's claims under both

42 U.S.C. § 1983 and Section II of the ADA. Insofar as Sheriff Chapman in his

official capacity moves for summary judgment, that motion is granted.

### C. Plaintiff's ADA Claims Against the Individual Defendants and Banks County Are Insufficient as a Matter of Law.

The remaining Defendants move for summary judgment on Plaintiff's

ADA claims, contending that the individual defendants in this action cannot be

sued under the ADA and Banks County—the only "entity" sued under the

ADA—did not deny reasonable accommodations to Plaintiff.[4] For the reasons

that follow, the Court agrees that Defendants are entitled to summary judgment

on Plaintiff's ADA claim.

---

[4] Defendants also contend that the ADA cannot constitutionally be applied to Banks County in the manner suggested by Plaintiff because such a requirement would constitute an unconstitutional "commandeering" of state officials. Further, Defendants contend that Banks County had no control over the conduct of officials within the Sheriff's Office, the Banks County Jail, or the Banks County Magistrate Court and thus cannot be held liable under the ADA for their actions. Because of the Court's resolution below, the Court does not reach these additional arguments.

1. *The Individual Defendants Are Not Subject to Suit under the ADA.*

As an initial matter, insofar as Plaintiffs bring claims against the individual Defendants under the ADA, those claims are due to be dismissed. Title II of the Disabilities Act provides a cause of action only against a "public entity" and not an individual acting under color of state law. 42 U.S.C. § 12132; see also Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 2007) (observing that there is generally no personal liability under the ADA); Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding that Title II ADA claim does not impose liability on individual defendants); Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as Garcia is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999) ("[W]e agree ... that the commissioners may not be sued in their individual capacities directly under the provisions of Title II. Title II provides disabled individuals redress for discrimination by a 'public entity.' That term, as it is defined within the statute, does not include

individuals."). Accordingly, insofar as Defendants move for summary judgment on Plaintiff's individual-capacity ADA claims, their Motion is granted.

      2.    *Plaintiff Has Failed to Demonstrate a Prima Facie Case of Discrimination under the ADA.*

      As stated, Title II of the ADA generally prohibits disability discrimination by a "public entity" in the administration of its services, programs, or activities. 42 U.S.C. § 12132. To prove a claim under Title II of the ADA, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from the participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such entity; (3) by reason of such disability. Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001). The Eleventh Circuit also requires that the plaintiff prove that he made a "specific demand" for an accommodation. Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999) (holding that "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made"); see also Wood v. Pres. and Trustees of Spring Hill College,

978 F.2d 1214, 1222 (11th Cir. 1992) (holding that student was required to demonstrate that she made specific request for accommodation to prevail on ADA claim against college).  With this as a foundation, the Court turns to exam whether Plaintiffs' evidence, viewed in his favor, establishes a violation of the ADA.

    a.    *Arrest, Interrogation, and Booking Not a Program, Service, or Activity Subject to ADA.*

Defendant first argues that Plaintiff's evidence fails to establish a violation of the ADA because Plaintiff's arrest, interrogation, and booking do not constitute "services, programs, or activities" under the ADA.  In <u>Rosen v. Montgomery County</u>, 121 F.3d 154 (4th Cir. 1997), the Fourth Circuit considered a similar ADA claim made by a hearing-impaired individual arrested for drunk driving, who was not provided an interpreter during his arrest or immediately thereafter.  Noting the difficulty in characterizing an arrested person as "eligible" for a service, benefit, or activity, the court reasoned as follows:

> The most obvious problem is fitting an arrest into the ADA at all.  Section 12131(b) defines "[q]ualified individual with a disability" as "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential

eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." Rosen clearly has a disability, but calling a drunk driving arrest a "program or activity" of the County, the "essential eligibility requirements" of which (in this case) are weaving in traffic and being intoxicated, strikes us as a stretch of the statutory language and of the underlying legislative intent. See Gorman v. Bartch, 925 F. Supp. 653, 655 (W.D. Mo. 1996) ("It stretches the statute to talk about the Plaintiff's 'eligibility' to be arrested and taken to jail or to participate in being arrested . . . .") . . . .

Rosen was in no way "denied the benefits of" his arrest. As far as the police officers were concerned, Rosen adequately participated in the various tests for intoxication, and the officers obtained the information they needed to complete the booking process. Rosen was simply not "discriminated against" just because he could not follow everything the officers were telling him.

Id. at 158.

This Court agrees that it would defy the plain language of the ADA to consider the arrest and booking process a service, program, or activity from which Plaintiff was excluded or denied benefits. What is more, Plaintiff was not arrested, questioned, or booked *as a result* of his hearing impairment. His arrest was the result of his wife and son's domestic violence complaint. See Bates ex rel. Johns v. Chesterfield County, 216 F.3d 367, 373 (4th Cir. 2000) (granting summary judgment on plaintiff's ADA claim because "the stop, the use of force, and the arrest of [an autistic teenager] were not by reason of Bates'

21

disability, but because of Bates' objectively verifiable misconduct. Such reasonable police behavior is not discrimination."). Accordingly, insofar as Plaintiff claims Banks County violated the ADA during the course of Plaintiff's arrest and booking, the Court concludes Defendants are entitled to summary judgment.

      b.    *Plaintiff Did Not Request an Accommodation Before or During His First Appearance Hearing.*

Defendants also move for summary judgment contending that Plaintiff's ADA claim arising out of the Magistrate Court's failure to provide him with an interpreter is also barred because Plaintiff has failed to demonstrate that he made a specific request for an accommodation. Plaintiff does not dispute that he failed to request an accommodation during his first appearance hearing. Further, Plaintiff offers no evidence or argument that any individual at the Banks County Magistrate Court was on notice of Plaintiff's hearing impairment. See Robertson v. Las Animas County Sheriff's Dept., 550 F.3d 1185, 1197 (10th Cir. 2007) (noting that where need for accommodation is obvious, specific request may not be required). Accordingly, no duty under the ADA was triggered. Gaston, 167 F.3d at 1363. Insofar as Defendants move for

summary judgment with respect to Plaintiff's ADA claims arising out of his

first appearance hearing, the Court concludes Defendants are entitled to

summary judgment.

       c.    *The Banks County Jail Did Not Violate the ADA for Denying Plaintiff's Request to Use His Own Cell Phone.*

Finally, Defendants move for summary judgment on Plaintiff's claim

arising out of the Banks County Jail's failure to honor his request to use his cell

phone to call his family during his 24-hour detention. Plaintiff testified that he

made a specific request to use his cell phone, but a jail officer confiscated his

cell phone along with Plaintiff's other personal property. (See Pl.'s Resp. to

Defs.' St. of Mat. Facts 59.) Plaintiff claims that the Jail's failure to allow him

to use his cell phone or an alternative device with which to call his family

during his 24-hour pretrial incarceration violated the ADA.

The ADA prohibits disability discrimination against state prison inmates.

Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 212, 118 S. Ct. 1952,

1956, 141 L. Ed.2d 215 (1998) (stating that the "ADA unambiguously extends

to state prison inmates," but declining to determine whether that application is a

constitutional exercise of congressional power); see also Onishea v. Hopper,

23

171 F.3d 1289, 1296 n. 11. Moreover, courts have recognized that the ADA requires that a jail provide the hearing impaired facilities to communicate by telephone where similar services are available to other inmates. E.g., Robertson v. Las Animas County Sheriff's Dept., 500 F.3d 1185, 1198-2000 (10th Cir. 2007). However, a jail need not honor any and every request a hearing-impaired individual makes to use a telephone, and the burden is on the plaintiff to establish that a particular denial rose to the level of an unreasonable accommodation. Spurlock v. Simmons, 88 F. Supp. 2d 1189, 1196 (D. Kan. 2000).

The Court recognizes that insofar as the Banks County Jail provides the "service" of telephones to pretrial detainees, it must also take reasonable measures to accommodate a hearing-impaired person who has requested an auxiliary aid or other alternative device to use a telephone. Robertson, 500 F.3d at 1193 n. 6 (noting that use of jail telephone is a "service" under ADA); 28 C.F.R. § 35.130(b)(7); 28 C.F.R. § 35.160.[5] In this case, however, unlike in

---

[5] 28 C.F.R. § 35.160 provides:

(a)   A public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others.

Robertson, Plaintiff has introduced no evidence to establish that other inmates were provided the service of telephone usage immediately upon their request after booking at the Banks County Jail. While the Court does not doubt that telephones were available to inmates at the jail, the evidence does not reflect that a policy existed at the jail to provide inmates telephone usage within their first 24 hours of detention. Absent such evidence, Plaintiff has failed to demonstrate that he was denied the benefit of a "service" provided to others at the time of his incarceration.

Even if the Court were to assume, however, that other inmates were provided telephone services during their first 24-hours of detention, the Court would nonetheless conclude that the actions of Banks County did not violate the ADA. Sheriff Chapman testified without dispute that in the eleven years that preceded Plaintiff's incarceration, the Banks County Jail staff had never

---

(b)　(1)　A public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity.

(2)　In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabilities.

28 C.F.R. § 35.160.

encountered a request by a hearing-impaired individual for an accommodation to use a telephone. As a result, the Banks County Jail did not have on hand auxiliary aids on the day that Plaintiff was detained. (Chapman Dep. [87-12] at 15, 20.) Although the ADA (presumably) imposed an obligation on Banks County to take reasonable efforts to acquire such an auxiliary aid during Plaintiff's incarceration, a reasonable juror could not find that Banks County's failure to do so within less than 24 hours of Plaintiff's request was unreasonable under the ADA. See Spurlock, 88 F. Supp. 2d at 1196 (finding it "unreasonable and implausible" to expect jail officials to "immediately assist" [the hearing-impaired plaintiff] whenever he finds it convenient to use the telephone, regardless of other job requirements"); 28 C.F.R. § 35.164 (limiting obligation of public entity to provide auxiliary aid to hearing-impaired person where it can demonstrate that the accommodation would result in an undue financial or administrative burden). Although the Court does not doubt that a longer incarceration would have allowed Banks County officials sufficient time to accommodate Plaintiff's request, the Court cannot conclude that Plaintiff was entitled to use a telephone immediately upon his request. The evidence does not establish that Plaintiff made a second request for a telephone, but rather was

26

released from prison the next day. [6]  Moreover, in view of the obvious concerns

about the use of cell phones and texting devices by pretrial detainees, the Court

concludes that it was not unreasonable for the Banks County Jail to seize

Plaintiff's cell phone in furtherance of a generally applicable policy to seize

personal property.

In sum, in view of Plaintiff's absence of evidence concerning a policy to

allow others to contact family members within hours of their detention and

because the Banks County Jail's failure to immediately honor Plaintiff's request

for an accommodation did not rise to the level of unreasonableness, the Court

---

[6] In <u>Robertson</u>, the Tenth Circuit reasoned that the denial of plaintiff's request for a telephone aid to communicate with his attorney prior to a probable cause hearing was a violation of the ADA even though the plaintiff made the request only "several hours" prior to the hearing.  500 F.3d at 1199.  The court observed that "[t]he defendants cite no authority suggesting that the protections of the ADA apply only to detentions that last a certain period of time." <u>Id.</u>  Rejecting the defendants' contention that acquiring an auxiliary device within such a short period of time constituted an administrative burden, the court noted that "the facility took *no action* in response to Mr. Robertson's request to call his attorney." <u>Id.</u>

Although this Court recognizes there may be some tension between its holding today and the Tenth Circuit's decision in <u>Robertson</u>, there is also a significant difference between the two cases.  Here, Plaintiff's request did not concern communicating with counsel and Plaintiff did not have an upcoming hearing to attend.  Such a request carries a more immediate need for an accommodation than Plaintiff's request to call a family member at issue in this case.

concludes that Plaintiff's ADA claims fails. Accordingly, Defendants are entitled to summary judgment.

**D.    Plaintiff's Constitutional Claims Fail.**

Construing his Complaint liberally, Plaintiff also brings claims under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment. For the reasons that follow, the Court concludes that Defendants are entitled to summary judgment on both claims.

1.    *Equal Protection Claim*

The Supreme Court has ruled that hearing-impaired persons are not a specially protected class under the federal constitution. See <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 446, 105 S. Ct. 3249 (1985) (Supreme Court declined to distinguish "groups who have perhaps immutable disabilities setting them off from others" and deeming them "quasi-suspect."); <u>see</u> <u>also</u> <u>California Assoc. of the Physically Handicapped, Inc. v. FCC</u>, 721 F.2d 667, 670 (9th Cir. 1983) ("No appellate court … has held that the handicapped are a suspect class."). Because Plaintiff is not a member of a protected class, the rational basis test applies. See <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). Under that test, the plaintiff must

28

demonstrate that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at 564. The state action must be "irrational and wholly arbitrary" in order to trigger equal protection concerns. Id. at 565.

No reasonable juror could conclude that Defendants' actions were irrational and not motivated by a conceivably legitimate reason. The evidence establishes that Plaintiff did not make Defendants aware of his request for an accommodation except during his brief pretrial incarceration in the Banks County Jail. Plaintiff's cell phone was seized as a part of a generally applicable policy to seize the personal effects of prisoners. Moreover, Plaintiff has offered no evidence to demonstrate that Defendants' failure to provide Plaintiff with a auxiliary aid during his brief detention was motivated by discriminatory animus. See Toledo v. Sanchez, 454 F.3d 24, 34 (1st Cir. 2006). Having failed to meet the first prong of Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), the individual Defendants are entitled to qualified

AO 72A
(Rev.8/82)

immunity.  Insofar as Defendants move for summary judgment on Plaintiff's equal protection claim, their motion is granted.

*2.*  *Due Process Claim*

Construing Plaintiff's claim liberally, he also sues Defendants for violation of his due process rights under the Fourteenth Amendment.  However, Plaintiff's due process claim "hinges on, at the minimum, a ruling that [his] ADA rights were violated."  <u>Rosen</u>, 121 F.3d at 156 n.2.   Because Plaintiff has failed to come forth with sufficient evidence of an ADA violation, much less a violation of his due process rights, the individual Defendants are entitled to qualified immunity and all Defendants are entitled to summary judgment.

**III.   Plaintiff's Motion to Strike**

Plaintiff moves to strike the written transcript of his deposition, contending that many of his answers were unintelligible or inaccurately transcribed as a result of his hearing impairment.  The Court reviewed the transcript and understands some of the concerns advanced by Plaintiff.  However, the Court's disposition of the motions above was not affected by the presence or absence of the written transcript in the record, and Plaintiff has

30

pointed to no specific testimony (or an affidavit) not accurately presented in the transcript or in the video that may have an effect on the resolution of this action. Accordingly, Plaintiff's Motion to Strike is **DENIED as moot**.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment [72] is **DENIED**. Defendants' Motion for Summary Judgment [87] IS **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff in this action. Plaintiff's Motion for Leave to File Brief Out of Time [96] is **GRANTED nunc pro tunc**. Plaintiff's Motion to Strike [102] is **DENIED as moot**.

**SO ORDERED** this ___11th___ day of August, 2008.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)